THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

| | | |
|---|---|---|
| JOSHUA GERENA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.:_____ |
| | ) | |
| POWER SYSTEMS MFG, LLC, | ) | |
| | ) | JURY DEMAND |
| Defendant. | ) | |
| | ) | |

## COMPLAINT WITH DEMAND FOR JURY TRIAL

**COMES NOW** Plaintiff, Joshua Gerena (hereinafter "Plaintiff"), by and through his undersigned counsel, and hereby files this lawsuit against Defendant, Power Systems MFG, LLC (hereinafter "Defendant" or "PSM"), and states as follows:

## JURISDICTION AND VENUE

1. This is an action by Plaintiff, Joshua Gerena, for compensatory and punitive damages, under the Americans with Disabilities Act of 1990, as amended, ("ADA"), 42 U.S.C. § 12111 *et seq.*, as amended, the Family and Medical Leave Act of 1993 ("FMLA), 29 U.S.C. § 2601 et seq the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760.01 *et seq.*, to redress injury caused by Defendant's interference with Plaintiff's FMLA rights, retaliation against his protected conduct of seeking leave for his injury(ies) and/or seeking an accommodation, discriminatory treatment by Defendant motivated by his protected classes (including his disability), retaliation in response to his protected conduct and/or for suffering an on-the-job injury and complaint concerning it.

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, 29 U.S.C. § 2601 *et seq.*, 42 U.S.C. § 2000(e) *et seq.*, and 29 U.S.C. § 621 *et seq.* This Court

has supplemental jurisdiction of the Florida Civil Rights Act Claims and any other state law claims pursuant to 28 U.S.C. § 1367.  Declaratory, injunctive, legal and equitable relief is sought pursuant to the laws set forth above to include attorneys' fees, costs, and damages, including to the extent permissible under the FWCA.

3. Defendant employs at least fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the relevant calendar years.

4. Defendant employs 50 or more employees within a 75-mile radius of the location where Plaintiff worked.

5. Plaintiff worked at least 1,250 hours for Defendant during his employment.

6. Venue is proper in Palm Beach County (28 U.S.C. § 89(c)), because Defendant conducts business in Palm Beach County, and some or all of the acts alleged herein took place in Palm Beach County.

7. Defendant is incorporated in and has its principal place of business in the state of Florida, namely, at 1440 W. Indiantown Road, Jupiter, Florida 33458.

8. Plaintiff is a resident of Palm Beach County, Florida.

9. All conditions precedent for the filing of this action before this Court have been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

10. On or about December 7, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 510-2021-01364.  A true and correct copy of Plaintiff's charge is attached hereto as Exhibit "A".

11. On or about December 17, 2020, the EEOC issued a Notice of Right to Sue letter to Plaintiff and suit has been commenced within ninety (90) days of receipt of the letter, a true and correct copy of which is included in Exhibit "B".

## **GENERAL FACTUAL ALLEGATIONS**

12. Plaintiff was hired by Defendant in January 2020.

13. Defendant provides aftermarket gas turbine components and parts reconditioning services.

14. Plaintiff's position was as a mechanical assembler.

15. Plaintiff worked for Defendant until his termination on or about October 14, 2020.

16. In or around September 2020, Defendant directed Plaintiff to perform a new task, calibrating (or similar) fuel-oil parts.

17. These fuel-oil parts he was assigned to calibrate are known as "spikes" or "rockets."

18. Defendant required Plaintiff to calibrate the spikes by hammering them with a six-pound mallet.

19. Plaintiff received minimal training on this new task with the mallet.

20. Plaintiff performed his work as assigned by Defendant concerning the new task.

21. The work Plaintiff performed was repetitive in nature.

22. After weeks of this repetitive motion, Plaintiff's right hand and wrist began to hurt from continuously hammering the spikes with the mallet.

23. On or about October 7, 2020, Plaintiff's level of pain became unbearable in his right hand and wrist.

24. Due to the pain, Plaintiff could not continue hammering.

25. Due to the pain, Plaintiff had difficulty sleeping.

26. On or about October 7, 2020, Plaintiff reported his on-the-job injury to his supervisor, Ms. Dawn l/n/u.

27. Dawn had a telephone conference call with Plaintiff and another female employee (name unknown) who handles workers' compensation claims for Defendant.

28. On the call, Plaintiff told them of the pain he was experiencing.

29. On the call, Plaintiff told them the pain was due to the hammering.

30. On the call, Plaintiff told them that the injury occurred on-the-job.

31. Dawn and the other female employee to go to Jupiter Medical Center (address: 1210 S. Old Dixie Highway, Jupiter, Florida 33458) the next day.

32. Plaintiff went to Jupiter Medical Center (JMC) the next day (October 8, 2020).

33. While at JMC, Plaintiff received an x-ray on his wrist/hand.

34. While at JMC, Plaintiff was prescribed ibuprofen for the pain and was referred to therapy two times a week for three weeks.

35. While at JMC, Plaintiff was placed on a work restriction of no push/pull/lift of any weight over five pounds.

36. On October 9, 2020, Plaintiff informed Dawn of his restrictions.

37. Dawn told Plaintiff there were no accommodation positions in Plaintiff's department that he could fill with his restrictions.

38. Dawn instructed Plaintiff to sit in a room while at work.

39. Dawn did not give Plaintiff anything to do while sitting in the room.

40. Plaintiff sat in the room as instructed.

41. Plaintiff sat in the room with nothing to do on October 9, 2020 (Friday).

42. Plaintiff sat in the room with nothing to do on October 12, 2020 (Monday).

43. Plaintiff asked periodically for something to do; however, he was told there was no work for him, but that Ms. Tonya l/n/u would soon be training him on clerical duties in the Tool Crib Office.

44. Tonya was only available at 1 P.M. each day and spent only a few hours at most training Plaintiff.

45. On October 13, 2020, in the morning before work, Plaintiff was experiencing a lot of pain in his wrist.

46. That morning, Plaintiff sent Dawn a text message asking to stay at home due to the pain.

47. Dawn responded, "Josh, you can ice it here at work. You are on light duty so this could easily be accommodated."

48. Plaintiff, wanting to be a team player and not knowing how to proceed, came into work as instructed.

49. Plaintiff would be allowed "breaks" while sitting in the room all day.

50. Plaintiff would sometimes lay his head down on the desk during the breaks.

51. Plaintiff did not sleep while laying his head down.

52. Plaintiff never slept at work.

53. On October 14, 2020, Plaintiff arrived at work and began sitting in the room, with nothing to do, awaiting Tonya around 1 P.M.

54. Soon after Plaintiff arrived, Dawn and someone from Defendant's HR met with Plaintiff and told him he was terminated.

55. They told Plaintiff he was terminated for "sleeping on the job."

56. Plaintiff disagreed with their statements and told them as much.

57. Plaintiff left work without incident that day.

58. Defendant's reason for termination is not legitimate, including because it is not true, rather, Plaintiff believes it was directly related to his complaint about his injury/serious medical condition as well as his request to have the previous day off due to pain, whereas comparator employees were allowed leave (including days available under Defendant's own internal policies) without being refused and/or requested leave related to injuries and were not terminated soon after.

59. Defendant, through its managers, supervisors, employees, and agents, failed to act in good faith concerning Plaintiff's on-the-job injury and/or failed to engage him in any interactive process concerning handling his on-the-job injury and an associated accommodation.

60. Defendant, through its managers, supervisors, employees, agents, treated Plaintiff less favorably than others without any on-the-job injury in the terms and conditions of their employment.

61. Defendant, through its managers, supervisors, employees, agents, mistreated Plaintiff when he requested time off due to his on-the-job injury.

62. Defendant, through its managers, employees, and agents, knew of plaintiff's medical condition and his workers' compensation claim/on-the-job injury before the termination decision was made.

63. Defendant, through its managers, supervisors, employees, and agents, retaliated against Plaintiff due to his on-the-job injury and/or filing an internal complaint requesting leave related to his injury.

64. Defendant is or may be liable to Plaintiff under the "cat's paw" theory of vicarious liability and, to the extent necessary, alleges that it is so liable.

65. Plaintiff is proceeding under and alleges a mixed motive theory of liability.

## Count I – ADA – Disparate Treatment & Failure to Accommodate

66. Plaintiff realleges and incorporates as if fully set forth herein all of the preceding paragraphs of this complaint.

67. Plaintiff has completed all necessary pre-requisites to bring its claims under the American with Disabilities Act of 1990, 42 U.S.C. § 12112(a) as amended.

68. Plaintiff was a qualified individual with a disability or disabilities.

69. Plaintiff was substantially limited in one or more major life activities due to his hand and wrist injury, including being substantially limited in the use of his right hand and wrist for long periods of time, and suffered a cognizable disability under the ADA, even if it could be considered temporary.

70. Plaintiff was substantially limited in one or more of the major life activities due to his hand and wrist injury, including being unable or limited in his ability to care for himself, and/or unable or less able to perform manual tasks as well as reaching, lifting, working, and loss of bodily functions.

71. Defendant was aware of Plaintiff's disability and/or substantial limitation in a major life activity and/or record of such impairment, and/or Defendant regarded Plaintiff as being disabled.

72. By and through its agents, supervisors, and employees, Defendant engaged in otherwise permitted a pattern and practice of unlawful disability discrimination against Plaintiff with respect to his compensation, terms, conditions or privileges of employment.

73. On information and belief, Defendant subjected Plaintiff to disparate treatment based on his disability, discriminating against him, including by terminating him and not terminating other employees who took and sought medical leave or accommodation(s) and/or had

7
SALAS LAW FIRM, P.A.

serious medical conditions and/or disabilities and/or on-the-job injuries, including requiring him to come to work on October 13th even though he was in severe pain, and refusing to engage Plaintiff in an interactive process or an adequate interactive process.

74. Plaintiff requested that Defendant respond to his request and/or engage him in an interactive process concerning a potential accommodation or accommodations, including regarding a position with job duties within his restrictions and/or by not requiring him to sit around each day and wait for Tonya to train him.

75. On information and belief, Defendant, through its agents, supervisors, and employees, including Dawn and/or others in management, failed to engage Plaintiff in any interactive process, callously and retaliatory terminated Plaintiff for requesting days off in efforts to rest his hand/wrist due to an on-the-job injury, and intentionally discriminated against Plaintiff, failed to accommodate him or failed to accommodate him in reality and adequately, and damaged him.

76. As a result of the aforementioned conduct, Defendant violated the ADA.

77. As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse job action which was motivated by his disability and resulting in him suffering further injury.

78. Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of disparate treatment based on a disability and/or violation of his rights were continuing in nature by Defendant.

79. Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination from the workplace and to prevent it from occurring.

80. As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, liquidated damages, and attorneys' fees and costs.

### Count II – FCRA –Disparate Treatment & Failure to Accommodate

81. Plaintiff realleges and incorporates paragraphs 1 to 65 as if fully set forth herein.

82. Plaintiff has completed all necessary pre-requisites to bring his claims under the Florida Civil Rights Act, Fla. Stat. § 760.10(1)(a).

83. Plaintiff was a qualified individual with a disability or disabilities.

84. Plaintiff was substantially limited in one or more major life activities due to his hand and wrist injury, including being substantially limited in the use of his right hand and wrist for long periods of time, and suffered a cognizable disability under the FCRA, even if it could be considered temporary.

85. Plaintiff was substantially limited in one or more of the major life activities due to his hand and wrist injury, including being unable or limited in his ability to care for himself, and/or unable or less able to perform manual tasks as well as reaching, lifting, working, and loss of bodily functions.

86. Defendant was aware of Plaintiff's disability and/or substantial limitation in a major life activity and/or record of such impairment, and/or Defendant regarded Plaintiff as being disabled.

87. By and through its agents, supervisors, and employees, Defendant engaged in otherwise permitted a pattern and practice of unlawful disability discrimination against Plaintiff with respect to his compensation, terms, conditions or privileges of employment/

88. On information and belief, Defendant subjected Plaintiff to disparate treatment based on his disability, discriminating against him, including by terminating him and not terminating other employees who took and sought medical leave or accommodation(s) and/or had serious medical conditions and/or disabilities and/or on-the-job injuries, including requiring him to come to work on October 13th even though he was in severe pain, and refusing to engage Plaintiff in an interactive process or an adequate interactive process.

89. Plaintiff requested that Defendant respond to his request and/or engage him in an interactive process concerning a potential accommodation or accommodations, including regarding a position with job duties within his restrictions and/or by not requiring him to sit around each day and wait for Tonya to train him.

90. On information and belief, Defendant, through its agents, supervisors, and employees, including Dawn and/or others in management, failed to engage Plaintiff in any interactive process, callously and retaliatory terminated Plaintiff for requesting days off in efforts to rest his hand/wrist due to an on-the-job injury, and intentionally discriminated against Plaintiff, failed to accommodate him or failed to accommodate him in reality and adequately, and damaged him.

91. As a result of the aforementioned conduct, Defendant violated the FCRA.

92. As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse job action which was motivated by his disability and resulting in him suffering further injury.

93. Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of disparate treatment based on a disability and/or violation of his rights were continuing in nature by Defendant.

94. Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination from the workplace and to prevent it from occurring.

95. As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, liquidated damages, and attorneys' fees and costs.

## Count III – FMLA Interference

96. Plaintiff realleges and incorporates paragraphs 1 to 65 as if fully set forth herein.

97. At all times during Plaintiff's employment, Defendant was an "employer" as defined in § 101(4) of the FMLA, 29 U.S.C. § 2611(4)(A).

98. At all times during Plaintiff's employment, Plaintiff was an "eligible employee" as defined of the FMLA, 29 U.S.C. § 2611(2).

99. Plaintiff engaged in a statutorily protected activity, attempted to take medical leave for a serious injury he suffered at work, and suffered an adverse employment action, termination, in October 2020.

100. Plaintiff did not receive his entitlement to FMLA leave, intermittent or otherwise, including not receiving his entitlement to medical leave related to his serious health condition.

101. On information and belief, Defendant treated other employees more favorably in the terms and conditions of their employment concerning medical and FMLA leave, including offering light duty positions and/or counting or allowing FMLA leave differently for them, including leave following on-the-job injuries.

102. On information and belief, Defendant, through its agents, supervisors, insurers, and employees, by terminating Plaintiff without providing him with FMLA leave, and/or by Dawn declining his request to take time off, and/or by treating Plaintiff less favorably than other

employees who suffered an on-the-job injury and/or who took FMLA leave, interfered with the exercise of and/or discriminated against Plaintiff for his exercise of his rights under the Family and Medical Leave Act of 1993, in violation of the anti-interference and anti-discrimination provisions of §105(a) of the FMLA, 29 U.S.C. § 2615(a), 29 C.F.R. § 825.220.

103. Defendant denied Plaintiff a benefit or benefits to which he was entitled under the FMLA by terminating him after requesting time off due to his on-the-job injury.

104. Defendant used Plaintiff's entitlement and attempted exercise of FMLA rights as a negative factor against him.

105. By and through its agents, supervisors, and employees, Defendant engaged in or otherwise permitted a pattern and practice of unlawful interference, discrimination, or retaliation on the basis of medical leave against Plaintiff with respect to his compensation, terms, conditions or privileges of employment.

106. As a result of the aforementioned conduct, Defendant violated the FMLA.

107. As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse employment action which was motivated by his medical leave and/or his medical leave was a substantial factor in Defendant's adverse action.

108. Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate FMLA interference from the workplace and to prevent it from occurring, including not adhering to its own internal policies and/or not applying its policies in a uniform fashion.

109. As a direct and proximate result of Defendant's willful discrimination and/or interference, Plaintiff has suffered damages. Plaintiff is thereby entitled to and/or seeks damages including back wages, liquidated damages, front pay, interest, and attorney's fees and costs.

### Count IV – FMLA Retaliation

110. Plaintiff realleges and incorporates paragraphs 1 to 65 as if fully set forth herein.

111. Plaintiff engaged in a statutorily protected activity, requesting needed time off from work to rest his hand/wrist due to an on-the-job injury, and then suffered adverse employment actions and termination.

112. Defendant, by terminating Plaintiff, retaliated against and/or used his medical leave as a negative factor and/or discriminated against Plaintiff for his exercise of his rights under the FMLA, in violation of the anti-retaliation and antidiscrimination provisions of §105(a) of the FMLA and/or of an implied federal right to be free from retaliation for exercising rights under the FMLA.

113. As a result of the foregoing, Defendant damaged Plaintiff and violated the FMLA.

114. Defendant has failed to comply with its statutory duty to take all reasonable necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

115. As a direct and proximate result of Defendant's willful discrimination and retaliation, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, liquidated damages, front pay, interest, and attorneys' fees and costs.

### Count V – ADA Retaliation

116. Plaintiff realleges and incorporates paragraphs 1 to 65 as if fully set forth herein.

117. Plaintiff engaged in a protected activity or activities, attempting to engage in an interactive process and/or taking protected medical leave and/or the seeking of an accommodation or accommodations.

118. When Plaintiff requested time off due to his on-the-job injury, he was forced to take sick leave, placed in a light-duty position doing nothing, required to show up to work even when in great pain, and was nonetheless terminated, which was pretextual.

119. Defendant, through its insurers, agents, supervisors, and employees retaliated against Plaintiff by refusing to allow him to use FMLA or other leave as time off for recovery, forcing him to take sick leave, treating Plaintiff less favorably than other employees, failing to provide an adequate accommodation, and by terminating Plaintiff.

120. On information and belief, there is a casual link between Plaintiff's protected activity(ies), including attempting to engage in an interactive process and opposing practices made unlawful under the ADA, and his discriminatory and retaliatory termination.

121. As a result of the aforementioned conduct, Defendant retaliated against and damaged Plaintiff in violation of the ADA.

122. As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse job action in retaliation for being disabled or injured and requesting time off to recuperate from his on-the-job injury was a motivating factor for Defendant's adverse actions.

123. Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of retaliation based on his disability or perception thereof and/or violation of his rights were continuing in nature by Defendant.

124. Defendant has failed to comply with its statutory duty to take all reasonable necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

125. As a direct and proximate result of Defendant's willful discrimination and/or retaliation, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to compensatory and punitive damages, interest, and attorneys' fees and costs.

### **Count VI – FCRA Retaliation**

126. Plaintiff realleges and incorporates paragraphs 1 to 65 as if fully set forth herein.

127. Plaintiff engaged in a protected activity or activities, attempting to engage in an interactive process and/or taking protected medical leave and/or the seeking of an accommodation or accommodations.

128. When Plaintiff requested time off due to his on-the-job injury, he was forced to take sick leave, placed in a light-duty position doing nothing, required to show up to work even when in great pain, and was nonetheless terminated, which was pretextual.

129. Defendant, through its insurers, agents, supervisors, and employees retaliated against Plaintiff by refusing to allow him to use personal days or "floating" days as time off for recovery, forcing him to take sick leave, treating Plaintiff less favorably than other employees, failing to provide an adequate accommodation, and by terminating Plaintiff.

130. On information and belief, there is a casual link between Plaintiff's protected activity(ies), including attempting to engage in an interactive process and opposing practices made unlawful under the FCRA, and his discriminatory and retaliatory termination.

131. As a result of the aforementioned conduct, Defendant retaliated against and damaged Plaintiff in violation of the FCRA.

132. As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse job action in retaliation for being disabled or injured and requesting time off to recuperate from his on-the-job injury was a motivating factor in Defendant's adverse actions.

133. Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of retaliation based on his disability or perception thereof and/or violation of his rights were continuing in nature by Defendant.

134. Defendant has failed to comply with its statutory duty to take all reasonable necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

135. As a direct and proximate result of Defendant's willful discrimination and/or retaliation, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to compensatory and punitive damages, interest, and attorneys' fees and costs.

### Count VIII –Workers' Compensation Retaliation

136. Plaintiff realleges and incorporates paragraphs 1 to 65 as if fully set forth herein.

137. This is an action against Defendant for workers' compensation retaliatory discharge under Fla. Stat. §§ 440.205; 440.015.

138. Plaintiff engaged in a protected activity, filing a workers' compensation claim, and was terminated soon after.

139. Defendant, through its agents, supervisors, possibly insurers, and employees, knew or were on notice of Plaintiff's condition and on-the-job injury.

140. Defendant, through its insurers, agents, supervisors, and employees, terminated Plaintiff's employment in October 2020 in violation of Fla. Stat. § 440.205, retaliating against him for filing a workers' compensation claim (or attempting to) around a month before his termination.

141. Defendant, through its insurers, agents, supervisors, and employees further retaliated against Plaintiff by not allowing Plaintiff to take time off to recuperate from his on-the-job injury, forcing him to take sick leave, and by otherwise treating Plaintiff differently that other employees because he suffered an on-the-job injury.

142. Plaintiff is seeking myriad damages, including lost wages, lost earning capacity, medical benefits, compensatory and punitive damages, as well as attorneys' fees and costs.

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Grant a permanent injunction enjoining Defendant its officers, successors, assigns and all persons in active concert or participation with it, from engaging in discriminatory or retaliatory practices in violation of the law;

(b) Award Plaintiff judgment against Defendant for compensatory and/or liquidated damages as determined by the trier of fact;

(c) Award Plaintiff all restitution and other damages, including interest, for the benefits he would have received absent the retaliatory treatment;

(d) Enter judgment for liquidated and/or punitive damages against Defendant; and

(e) Award all reasonable attorneys' fees and costs incurred in connection with this action; and any other further relief as justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 12th day of March, 2021.

//s//Michael G. Green II, Esq.
SALAS LAW FIRM, P.A.
8551 West Sunrise Boulevard
Suite 300
Plantation, FL 33322
Office: (954) 315-1155
Fax: (954) 452 -3311
Email:  michael@salaslawfirmpa.com
Fla. Bar. No. 60859

//s//John P. Salas, Esq.
John P. Salas, Esq.
Fla. Bar. No. 87593
SALAS LAW FIRM, P.A.
8551 West Sunrise Boulevard
Suite 300
Plantation, FL 33322
Office: (954) 315-1155
Fax: (954) 452 -3311
Email: jp@salaslawfirmpa.com